JOY COSSICH LOBRANO, Judge.
|, This is an appeal from a resentencing. The State of Louisiana charged the defendant, Curtis F. Williams, with one count each of attempted second degree murder, a violation of La. R.S. 14:(27)80.1, and home invasion, a violation of La. R.S. 14:62.8. The State subsequently amended the home invasion charge to aggravated burglary, a violation of La. R.S. 14:60. Following a trial, the jury convicted Williams of both counts.. The trial court sentenced Williams to forty-nine years for count one and twenty-nine years for count two, with the sentences to run consecutively.
On original appeal, this Court affirmed both convictions, but vacated the original sentences and remanded for resentencing. State v. Williams, 2011-0414 (La.App. 4 Cir. 2/29/12), 85 So.3d 759. This Court held that the terms of the original sentences were not constitutionally excessive. Id., 2011-0414, p. 30, 85 So.3d at 777. However, the Court vacated the sentences because the record reflected that the trial court gave no reasons for imposing the sentences consecutively. Id., 2011-0414, p. 29, 85 So.3d at 777, citing State v. Jefferson, 2004-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577.
IgThe trial court resentenced Williams on December 10, 2012, imposing the same sentences to run consecutively, and assigned reasons therefore. This appeal followed.
The underlying facts are set forth in the Court’s opinion at Williams, supra, 2011-0414, pp. 2-15, 85 So.3d at 762-769.
At the December 10, 2012 resentencing hearing, several people testified in Williams’ favor. Eddie Savant, Williams’ only brother, testified that Williams had never been in trouble before and the instant prosecution was the only time Williams had been to court.
Giselle Anderson, Williams’ eldest sister, testified that Williams had never been in trouble before and is a hard worker. She also testified that he took care of his children and this prosecution was devastating to the entire family. Anderson also testified that Williams is bipolar and schizophrenic. She also asserted that the victim had stabbed Williams in the past, leaving scars.
Williams’ mother, Verna Williams, testified that Williams went to her house every day to care for her and her husband because she had suffered a stroke and has thyroid trouble. She also testified that Williams was bipolar and a schizophrenic.
The record reveals no errors patent in the resentencing.
Though Williams has raised three assignments of error in this appeal, collectively his arguments assert only one error — that the trial court’s sentencing him to serve his two sentences consecutively resulted in an excessive sentence.
Louisiana Constitution of 1974, Art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” A sentence is unconstitutionally excessive when it imposes punishment grossly dispropor-tionatejjto the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. *695 Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Smith, 2001-2574, p. 6 (La.1/14/03) 839 So.2d 1, 4. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 2000-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462. In performing such a review, the appellate court “must consider the punishment and crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.” Bonanno, 384 So.2d at 358.
Regarding whether sentences are served concurrently or consecutively, La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Although Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, a trial judge has discretion to impose consecutive sentences on the basis of other factors, including the offender’s past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49. This Court has repeatedly held that in executing this discretion by imposing consecutive, |4rather than concurrent, sentences, the trial court must articulate particular justification for such sentencing, “beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. art. 894.1.” State v. Jefferson, 2004-1960 p. 39 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, 604, citing State v. Dempsey, 2002-1867 p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040, citing, State v. Pittman, 604 So.2d 172 (La.App. 4th Cir.1992), citing State v. Messer, 408 So.2d 1354 (La.1982). However, in Messer, the Court merely noted that, “[a]s a general rule, the imposition of consecutive rather than concurrent sentences for crimes arising from a single course of conduct requires particular justification.” 408 So.2d at 1357, citing State v. Franks, 373 So.2d 1307 (La.1979)(imposition of consecutive sentences requires particular justification), and State v. Cox, 369 So.2d 118 (La.1979)(trial court did not specify reasons for issuing consecutive sentences). No mention was made of C.C.P. art. 894.1. The Messer Court specifically found, “[i]n this case, the trial court adequately complied with La.C.Cr.P. art. 894.1 by stating the factual basis and individual considerations which led to his determination of the appropriate sentences and the manner in which they were to be served.” 408 So.2d at 1357. Accordingly, this analysis considers whether the trial court provided additional reasons to justify consecutive sentencing.
On original appeal in this case, this Court noted that at the original sentencing, the prosecution asked the court to impose the maximum sentences pursuant to La.C.Cr.P. art. 893.3(E)(1)(a) and (b) due to the use of a gun during the commission of the offenses. Williams, 2011-0414, *696 p. 27, 85 So.3d at 776. The State also noted that had the victim’s hand not deflected the bullet, she could have been killed. Id., 2011-0414, p. 28, 85 So.3d at 776. Defense counsel asserted a Isminimum sentence should be imposed, arguing Williams had no prior convictions. Id. In issuing the original sentence, the trial court recounted the facts of the case, including the fact that Williams shot his son’s mother in front of him. Id. The trial judge also stated that she would have issued a lesser sentence had Williams pled guilty only because she would not have been fully aware of the circumstances of the case. Id.
On original appeal, this Court remanded the case for the trial court to provide reasons for mandating that the two sentences imposed be served consecutively, rather than concurrently. When resen-tencing Williams, the trial court specified that it had originally issued consecutive sentences due to the presence of the child (Williams’ son) during the shooting, which led to the child having to testify against his own father at trial. The trial court reiterated that fact as the reason for reissuing consecutive sentences. The trial court also reasoned severe sentences were necessary due to the severity of the crime. In doing so, the trial court emphasized that Williams knew of the child’s presence in the home due to an earlier visit to the home during the day the assault occurred. The trial court reasoned that, had Williams not known of the boy’s presence, it might consider a different sentence. The trial court expressed concern about the impact on the child, particularly worrying that the boy would feel responsible for his father’s incarceration. The trial court was also concerned that the boy would have to deal with this entire incident for the rest of his life, and expressed hope that he would not end up as a criminal defendant or in a life of crime as a result. The trial court also noted that the mother was disfigured as a result of the shooting and that her life had changed forever. According to the trial court, “[e]very time she looks at her face she will remember that she was shot by Mr. Williams.” Based on these | fitwo factors, the trial court found the maximum penalty for attempted second degree murder — fifty years — to be sufficient punishment “for him to pay his debt to society and for the actions he set into motion.” The trial court dismissed the resentencing hearing testimony of psychological issues as something that should have been raised at trial. In issuing the forty-nine year sentence for count one and the twenty-nine year sentence for count two, to be served consecutively, and without benefit of probation, parole or suspension of sentence, the trial court specified its intent that Williams serve a total of seventy-eight years in prison for his crimes.
The additional reasons the trial court gave in re-imposing the same sentence: 1) the child was detrimentally impacted by watching his father shoot his mother and having to testify against his father; and 2) the impact of permanent disfigurement on Ms. Johnson; are clearly supported by the testimony of both the victim and her son. Ms. Johnson testified at the trial that she had been through six reconstructive surgeries on her mouth and face, and expected more surgeries. The child testified that he was awakened by his mother’s screaming and ran to the kitchen, where he saw his father hitting his mother with a gun. The extent of the victim impact in this case clearly influenced the trial court’s sentencing decision. Moreover, Ms. Johnson’s testimony about incidents in 2006 and 2007 showed a history of violence between her and the defendant. According to Ms. Johnson, Williams had pointed a gun and beat her in front of their son during the 2006 incident.
*697 Based upon our review of the record, we find the trial court did not abuse its discretion in ordering Williams to serve his sentences for attempted second degree 17murder and aggravated burglary consecutively. Accordingly, the sentences imposed by the trial court upon Williams on remand are affirmed.
AFFIRMED.